UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

GREGORY M.,

                                        Plaintiff,

                    v.

KILOLO KIJAKAZI,
Acting Commissioner of Social Security,

                                        Defendant.

_____

DECISION AND ORDER

20-CV-1031L

 

 

Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security ("the Commissioner"). The action is one brought pursuant to 42 U.S.C. §405(g) to review the Commissioner's final determination.

On August 22, 2017, plaintiff filed applications for a period of disability and disability insurance benefits, alleging an inability to work since April 15, 2017. (Dkt. #10 at 16). His applications were initially denied. Plaintiff requested a hearing, which was held on July 15, 2019 before administrative law judge ("ALJ") William M. Weir. The ALJ issued a decision on August 30, 2019, finding plaintiff not disabled. (Dkt. #10 at 16-29). That decision became the final decision of the Commissioner when the Appeals Council denied review on June 17, 2020. (Dkt. #10 at 1-3). Plaintiff now appeals.

The plaintiff has moved pursuant to Fed. R. Civ. Proc. 12(c) for judgment vacating the ALJ's decision and remanding the matter for further proceedings (Dkt. #13), and the Commissioner has cross moved for judgment dismissing the complaint (Dkt. #14). For the reasons

set forth below, the plaintiff's motion is denied, the Commissioner's cross motion is granted, and the complaint is dismissed.

## DISCUSSION

Familiarity with the five-step evaluation process for determining Social Security disability claims is presumed. *See* 20 CFR §404.1520. The Commissioner's decision that plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ has applied the correct legal standards. *See* 42 U.S.C. §405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002).

### I.     The ALJ's Decision

Plaintiff was born February 26, 1972, and was 45 years old on the alleged onset date, with a high school education and past relevant work as a product assembler and machine operator. (Dkt. #10 at 27). His medical treatment records reflect a history of seizure disorder, generalized anxiety disorder, borderline intellectual functioning, and major depressive order, which the ALJ found to be severe impairments not meeting or equaling a listed impairment. (Dkt. #10 at 18).

In applying the special technique for mental impairments, the ALJ determined that plaintiff has moderate limitations in understanding, remembering, or applying information, interacting with others, maintaining concentration, persistence, and pace, and adapting or managing himself. (Dkt. #10 at 20). The ALJ accordingly concluded that plaintiff's mental impairments were not, by themselves, disabling.

After reviewing the evidence of record, the ALJ determined that the plaintiff retained the residual functional capacity ("RFC") to perform medium work, except that he can never be exposed to unprotected heights or to dangerous machinery, tools, or chemicals. He is limited to

2

simple, repetitive, one-to-two step tasks with no complex work, no interaction with the public, and no more than occasional interaction with coworkers and supervisors. (Dkt. #10 at 22).

When presented with this RFC as a hypothetical at the hearing, vocational expert Dale Pasculli testified that such an individual could not perform plaintiff's past relevant work as a product assembler or machine operator. However, he could perform the representative positions of kitchen helper (medium exertion) or addresser (sedentary exertion). (Dkt. #10 at 28, 59-60). The ALJ accordingly found plaintiff not disabled.

## II.     The ALJ's Assessment of Medical Opinion Evidence

Plaintiff primarily alleges that the ALJ failed to support his RFC finding with competent medical opinion, and thus improperly substituted his own lay opinion.

With respect to plaintiff's physical RFC, the record contained multiple assessments by plaintiff's treating neurologist, Dr. Anand Nyathappa, which the ALJ variously gave partial weight or no weight. (Dkt. #10 at 410-13, 465-66, 710-11). Specifically, the ALJ rejected Dr. Nyathappa's opinion that plaintiff's seizure disorder (or any other impairment) limited him to less than 6 hours of sitting and 2 hours of walking or standing in an 8-hour workday, finding it to be inconsistent with Dr. Nyathappa's objective findings and plaintiff's treatment records, which consistently noted full motor strength, full range of motion, and normal reflexes, with only occasional gait abnormalities. The ALJ also noted that such dramatic limitations were inconsistent with plaintiff's self-reported activities of daily living, which consisted of living alone, engaging in personal care, cooking, cleaning, gardening, working for a friend's landscaping business, shopping, and socializing with friends. (Dkt. #10 at 25, 26, 417).

The ALJ credited Dr. Nyathappa's opinion that plaintiff should not lift, push, or pull "heavy weights," that plaintiff could stand for up to four hours at a time, and that plaintiff had moderate

limitations in lifting, carrying, pushing, pulling, and bending, but declined to adopt the specific 30-pound lifting and carrying restriction that Dr. Nyathappa indicated in his later opinion. *Id.*

The ALJ also considered a report by reviewing state agency source R. Reynolds. Reynolds opined that plaintiff could perform work at the light exertional level, with the ability to lift up to 20 pounds occasionally and 10 pounds frequently, and could sit, stand, or walk for up to 6 hours in an 8-hour workday. (Dkt. #10 at 69). The ALJ gave Reynolds's opinion "partial" weight, but found that a limitation to light work was inconsistent with plaintiff's consistently normal neurological and musculoskeletal findings. (Dkt. #10 at 26).

With respect to plaintiff's mental RFC, the record contained assessments from plaintiff's treating therapist, Kristi Dierolf (Dkt. #10 at 698-99, 827-32), and consulting psychologist Dr. Susan Santarpia. (Dkt. #10 at 415-18). Ms. Dierolf's initial opinion indicated that due to depression, anxiety and borderline intellectual functioning, plaintiff was "moderately" limited with respect to understanding and remembering instructions, maintaining concentration, making simple decisions, interacting with others, and functioning in a work setting at a consistent pace. The ALJ gave this opinion "partial" weight, finding that although plaintiff's mental limitations were generally moderate, a limitation with regard to simple decisions was unsupported by the record, including plaintiff's treatment records and plaintiff's activities of daily living, which included managing his own home and finances. The ALJ gave "no" weight to a second, later opinion by Dierolf, which described "serious" limitations in almost all functional areas, based on its inconsistency with plaintiff's treatment notes, which generally noted normal objective findings and no significant reports of worsening symptoms. (Dkt. #10 at 27).

Dr. Santarpia's examination findings were grossly normal, and she opined that plaintiff had no mental limitations. The ALJ found Dr. Santarpia's opinion "partially" persuasive as it was

based on her objective examination findings, but concluded that the record supported a *greater* level of mental limitation than Dr. Santarpia had indicated. (Dkt. #10 at 26). The ALJ fully credited the opinion of state agency reviewing physician H. Ferrin (Dkt. #10 at 64-67) that plaintiff's depression was "severe," noting that this finding was consistent with plaintiff's history of psychiatric medication and counseling.

On review, I find no error in the ALJ's weighing of the medical opinions of record.

The ALJ was free "to choose between properly submitted medical opinions." *McBrayer v. Sec'y of Health & Human Servs.*, 712 F.2d 795, 799 (2d Cir. 1983). His reasons for rejecting some of the more dramatic limitations indicated by medical sources – as well as for including limitations in his RFC finding that *exceeded* those indicated in other medical opinions – were sufficiently stated and supported by the evidence of record.

The ALJ's observation – that plaintiff's physical and mental treatment records did not contain objective findings to support significant exertional or psychological limitations – was not erroneous, and the ALJ was likewise entitled to consider plaintiff's activities of daily living in considering the extent of his functional limitations. *See e.g.*, Dkt. #10 at 410 (Dr. Nyathappa's internally-inconsistent October 5, 2017 report which: noted full motor strength, full reflexes, full sensation, and no significant gait abnormality; opined without explanation that plaintiff has significant exertional limitations; but also endorsed the statement, "I cannot provide a medical opinion regarding [plaintiff's] ability to do work-related activities"); 424 (October 31, 2017 treatment note describing normal musculoskeletal and neurologic findings, such as full strength, normal gait, and full range of motion); 427 (November 17, 2017 treatment note again indicating entirely normal musculoskeletal and neurologic findings); 449, 451, 455, 456, 457, 461, 463, 823 (treatment notes from Dr. Nyathappa between October 2016 and June 2019, noting normal

strength, coordination and gait); 467, 469 (October 5, 2018 and November 9, 2018 treatment notes from Dr. Nyathappa, noting full strength in upper extremities, normal gait and coordination, and 4+/5 strength in lower extremities, with complaints of back pain); 598-668 (January 2019 through May 2019 mental status examinations with Dierolf, consistently noting appropriate affect, cooperative demeanor and generally normal findings).

I also do not agree with plaintiff that the ALJ, after rejecting the opinion of Dr. Santarpia (who opined *no* limitations), was obligated to recontact plaintiff's treating sources or order additional examinations to complete the record. Dr. Santarpia's opinion was one of several that addressed plaintiff's mental health RFC, and the ALJ supported his mental RFC finding by granting partial weight to Dr. Santarpia's opinion and partial weight to an opinion by Ms. Dierolf, taking note of the largely normal objective findings contained in plaintiff's mental health treatment records, and by considering plaintiff's self-reported activities of daily living. An ALJ is not obligated to recontact a physician where, as here, the record otherwise contains sufficient evidence by which a well-supported disability determination can be made. *See Rachel W. v. Commissioner*, 2021 U.S. Dist. LEXIS 56931 at *13-*14 (W.D.N.Y. 2021) (where the record before the ALJ is complete enough form a disability determination, the ALJ is not required to recontact a medical source").

In summary, the RFC determined by the ALJ was well-supported by substantial evidence of record, including portions of the medical opinions (some of which opined greater limitations than those adopted by the ALJ, and some of which opined fewer limitations), plaintiff's treatment records, and plaintiff's testimony concerning his activities of independent daily living. Moreover, to the extent plaintiff argues that the ALJ erred in finding plaintiff capable of work at the medium exertional level rather than at the sedentary or light levels, such error was harmless, as the record

establishes that there are positions in the economy plaintiff could perform even at the sedentary level.

I have considered the remainder of plaintiff's arguments, and find them to be without merit.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to vacate the ALJ's decision and remand the matter (Dkt. #13) is denied, and the Commissioner's cross motion for judgment on the pleadings (Dkt. #14) is granted. The ALJ's decision is affirmed in all respects, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
       September 10, 2021.

7